White, J.
The statute under which the proceedings of the city •council were had, upon which the original petition was founded, is as follows:
“ Municipal corporations shall have power to cause any lot, within their limits, on which, or part of which, water shall at any time become stagnant, to be raised, filled up, or drained, and to cause all *54 putrid substances, whether animal or vegetable, to be removed from any lot or lots, and may, for such purposes, from time to time, direct that such lot or lots be raised, filled up, or drained, or that such putrid substances be removed from such lot or lots by the owner or owners thereof respectively, in such reasonable time, and in such manner, as may be directed by a resolution of the proper authority of any municipal corpoi’ation; and it shall be the duty of such owner or owners, his, her, or their agent or attorney, after service of a copy of the said resolution, or after a publication of the same-in some newspaper of general circulation *in said municipal corporation for four successive weeks, to comply with the direction, of such resolution, within the time therein specified, and in case of failure or refusal to do so, it may be done at the expense of such municipal corporation, and the amount of money so expended shall be a debt due to said municipal corporation from the owner or owners of such lot or lots, in proportion to the amount expended on the lot or lots owned by him, her, or them respectively, to be recovered before a justice of the peace or other court of competent jurisdiction; and shall, moreover, from the time of the adoption of such resolution, be a lien on such lot or lots, which maybe enforced, if need be, either after or without a previous proceeding at law, by a suit in equity in the court of common pleas of the proper county and like proceedings may be had as hereinbefore directed in relation to the improvement of streets, or as in other cases at law or in equity.” 2 S. & 0. Stat. 1506, sec. 32.
The validity of these proceedings is assailed upon two general ' grounds: first, because the statute which authorizes the charge sought to, be enforced is unconstitutional and void; and second, admitting the law to be valid, that its requirements have not been, so followed as to give the city a lien.
I. As to the alleged uneonstitutionality of the statute:
The constitution (article 13, section 6) expressly requires the-general assembly to provide for the organization of municipal corporations, and enjoins upon that body the duty of restricting their powers of taxation, assessment, etc., so as to prevent the abuse of the powers conferred. The power of creating municipal corporations necessarily implies authority to confer upon them such police-powers as may be necessary for their internal government; and, among these, none is more important than the power to adopt such *55 sanitary i’egulations as may be required to provide for the safety and preserve the health of the inhabitants.
The manifest object of the sections of the statute above named,, is to confer upon municipalities the power of requiring the abatement of nuisances existing upon property within their jurisdiction. Whether a nuisance exists or not in a ^particular case, justifying the exercise of the power by the municipal authorities, is a question of fact to be determined from the evidence. The constitutional objections, urged by the counsel for the plaintiffs in error, lie against the case which they claim to have been made by the plaintiff below, rather than against the validity of the statute under which it is claimed by the plaintiff to have arisen. And these objections maybe resolved into the single one—that the ease made did not warrant the action of the corporate authorities, or lay a foundation for the relief sought by the plaintiff in the original suit. The substance of the claim is, that the work performed was not required for the removal of an existing nuisance, but was designed to prevent or guard against a future or imaginary one which might never become a reality; and that, consequently, the filling up of the lots and the assessment of the expense upon the owners, was an attempt, by indirection, to subject private property to public use without compensation.
Proceedings of the city council merely colorable, and designed, under the pretense of removing a nuisance, to compel the lot-owners to improve their property, of course could not be sustained. If such was the state of fact in the present case it should have been shown in the record, but it does not so appear. There was no special finding of the facts separately from the conclusions of law under the code; and although the bill of exceptions states that the facts set forth in the statement of the case were proved, yet, what other facts may have been proved does not appear, nor does the bill profess to state all that was proved.
It maybe that stagnant water might exist upon property within the territorial limits of the corporation which the city authorities would not be authorized to compel the owner to remove. It might be removed from the inhabited parts, and so situated with reference to other property as not to create a nuisance. But without inquiring into cases which may exist, in which the public authorities could not be permitted to require the owner to improve the condition of his property, without infringing upon the invio *56 lability of private property guaranteed by the constitution, it is sufficient here to say that the present case does not appear to belong to that class. The %-ecord does not -disclose the situation of the property with reference to the inhabited parts of the city, and, for aught that appears, it may have been surrounded by a dense population.
It is true the assessments on some of the lots appear to be high —varying from three hundred and fourteen dollars and seventy-five cents, the maximum, to three dollars and seventy-two cents, the minimum sum; but as neither the value of the lots is shown, nor the ratio which the assessment bears to such value, the charge imposed can not be said to be such as to substantially exhaust the owner’s interest in the property.
II. As to the objection that the requirements of the statute have not been so followed as to give the city a lien.
1. It is claimed that the only work required of the lot-owners was the removal of the water present on the lots at the time of the passage of the resolution. And it is correctly said that the power of the city to create a lien is limited to the exjmnse of performing the work required of the owner by the resolution.
The answer to this objection is found in a fair construction of the resolution as applied to its subject-matter. At the time of the passage of the resolution, there was stagnant water on the property, and at times water would accumulate on all of it, and, there "being no sufficient drainage, remain.until evaporated. There was •only a small portion of the property on which water stood all the year. Before the filling, aquatic plants only would grow on the parts of the lots filled; and the rule adopted by the council was to fill to the line where such plants grew. By the language of the xesolution, the lot-owners wore directed “to fill and drain said lots in such manner as shall be necessary to remove therefrom all stagnant water." The reasonable meaning of these terms is, to require of the owners, not the temporary, but the permanent removal of all ■stagnant water from their respective lots. The statute authorizes the city to cause any lot, 11 on which water shall at any time become stagnant, to be raised, filled up, or drained,” etc. It is not the water that may be standing on the lots at a given period of time that •constitutes the evil. The nuisance, as remarked by counsel, is of an intermittent *and cohstantly recurring character. The water which falls and stands in the wet season, cither partially or *57 -wholly disappears in the dry months of summer, leaving the aquatie vegetation decaying and producing malarious diseases. The nuisance, being the result of natural causes, would continue to recur while the lots remained in the same condition; and a construction which contemplates the repetition of the work at every such recurrence would bo most unreasonable. Besides, it does not appear that any more economical mode could have been resorted to than the ■one that was adopted; and the rule to which the filling of the lots was made to conform, would seem to preclude the idea that any more work was done than- was required to remove .the stagnant water. A reasonable construction of the resolution requires, not merely the removal of water then on the lots, but the work to be .so done as to prevent the recurrence of stagnant water from the same causes. And the resolution being a reasonable sanitary measure for preserving the health of the inhabitants of the city, is not in conflict with the constitution.
2. The next objection, under this head, is, that the resolution is void for uncertainty; and, it is said, that it is incumbent on the council to direct, not only what is to be done, but the manner of doing it.
The resolution must, undoubtedly, be reasonably certain in its requirements. Putrid substances and stagnant water are alike obnoxious as causes of nuisance. To effect their removal, and thus .abate the nuisance by removing the cause, is the object of the section of the statute under consideration.
The description of the manner of accomplishing this result may be general—leaving to the judgment and discretion of the owner -the particular mode of doing the work so that it effects the object, nr this judgment and discretion may be exercised by the city council, and the work be so specifically defined by that body as to leave little or no discretion to the owner in its performance.
If putrid substances exist on a lot they might be removed by being buried on the lot, or hauled off, and we apprehend that, in such case, a resolution requiring their removal would sufficiently ■describe the manner of abating the nuisance. So, *where, upon a particular lot, there is a pond of stagnant water, direction that the lot be so filled up as to remove all the stagnant water, would be equally objectionable. The topography of a locality, embracing a number of contiguous lots, owned by different persons, might be such as to require, for the removal of the stagnant water *58 on one, the adoption of a system which should comprehend and apply to all. In such ease, it might be necessary that the work to be done by each owner should be particularly defined, and that a. general direction would be insufficient. And while it is true that, in the present case, a great number of lots wore embraced in the resolution, yet the record does not show that any such difficulty asís suggested existed.
Whether, in a given case, the direction in the resolution to the owners is sufficiently specific, will depend somewhat upon the situation of the lots to which it relates; but where the work to be-done is clearly defined in general terms, the fact of leaving to the-owner, who bears the expense, the choice of the means, will not invalidate the resolution.
This construction of the statute will generally be less onerous upon lot-owners than to require the details of the work to bo fixed in all cases by the city council.
3. The remaining objection which we shall notice is, that the work was not done at the expense of the city; and that there was no expenditure of money which it was authorized to assess on the lots.
The statute provides that on default of the owner, the work may be done at the expense of the corporation, and that the amount of money expended shall be a debt, due to it from the owner, which is declared, moreover, to be a lien on the lot. If the work is done on the credit of the city, it is, in effect, done at its expense; and it can make no difference to the owner whether the obligation has been paid or not. He can only be assessed for the fair and reasonable cost of the work.
In this case the city stipulated to make a valid assessment of the expenses upon the lots, which, when authenticated and delivered to the contractor, with authority to collect the same, was to be received in discharge of all claims against the city. The expenditures in the construction of the work were made *by the contractor, under the authority and on behalf of the city, and were the same, in effect, as if paid directly by it.
It is true the corporation could not increase the burden upon the lot-owner by devolving the risk and cost of collection upon the contractor; and the district court properly reduced the assessments to the cash rates at which he- offered to perform the work.

Judgment affirmed.

Brinkerhoee, C. J., and Scott, Day, and Welch, JJ., concurred.